| | |
|---|---|
| LIBERTY INTERNATIONAL UNDERWRITERS CANADA, | Civil No. 12-4934 (NLH/JS) |
| Plaintiff, | **OPINION** |
| v. | |
| SCOTTSDALE INSURANCE COMPANY and INFINITY ACCESS LLC, | |
| Defendants. | |

**APPEARANCES**:

STEPHEN ALLEN LONEY, JR., ESQUIRE
HOGAN LOVELLS US LLP
1835 MARKET STREET, 29th FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
    *Attorney for Plaintiff Liberty International*
    *Underwriters Canada,*

GARY S. KULL, ESQUIRE
APRIL T. VILLAVERDE, ESQUIRE
CARROLL, McNULTY & KULL LLC
120 MOUNTAIN VIEW BLVD.
P.O. BOX 650
BASKING RIDGE, NEW JERSEY 07920
    *Attorneys for Defendants Scottsdale Insurance*
    *Company and Infinity Access LLC.*

**HILLMAN, District Judge**:

Currently pending before the Court is the Motion for Judgment on the Pleadings by Defendant Infinity Access LLC. For the reasons set forth below, the Motion shall be denied.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter stems from an insurance policy coverage dispute. Plaintiff Liberty International Underwriters Canada ("LIU") is an insurance agency based in Toronto, Ontario, Canada that provides liability insurance coverage.  (Compl. ¶ 2.)  Defendant Scottsdale Insurance Company ("Scottsdale") is also an insurance agency, and is located in Scottsdale, Arizona.  (Id. ¶ 3.) Defendant Infinity Access LLC ("Infinity") is a company engaged in the construction and remodeling business.  Tractel Ltd. ("Tractel") is also a construction and remodeling business, and is likewise based in Canada. (Id. ¶ 6.)[1]

According to the facts alleged in Plaintiff's Complaint, in March of 2005, Tractel and Infinity entered into multiple construction work contracts.  (Id. ¶ 10.)  Under the contracts, Infinity became Tractel's subcontractor, and agreed to provide Tractel with supplies, equipment, and labor necessary to install window washing systems at construction sites.  (Id.)  Pursuant to the terms of the contracts, Infinity agreed to hold harmless and indemnify Tractel for any work-related liabilities resulting from Infinity's conduct at the sites.  (Id.)

---

[1]  Neither Tractel nor Scottsdale are parties to the instant Motion.  However, because these parties played significant roles in the underlying litigation, the Court identifies them here.

On or about November 9, 2006, Scottsdale issued a commercial general liability policy to Infinity (hereinafter "the Scottsdale Policy"). (Id. ¶ 18.) The Scottsdale Policy provided coverage to Infinity for bodily injury and property damage, and had a per occurrence limit of $1 million and a $5 million aggregate limit. (Id.) The Scottsdale Policy included a provision that provided coverage for additional insureds — such as Tractel — when such coverage was required by a construction agreement with Infinity. (Id.) The provision in the Scottsdale Policy explicitly stated as follows:

> [A]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damages" or "personal and advertising injury" caused, in whole or in part, by: (1) Your acts or omissions; or (2) The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.
>
> A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

(Id.) Scottsdale also issued a commercial umbrella policy to Infinity on November 9, 2006, which had a per occurrence limit of $2 million and a general aggregate limit of $2 million. (Id. ¶ 20.) Akin to the general commercial liability policy,

3

Scottsdale's umbrella policy likewise applied to Infinity's
additional insureds.  (Id.)

On or about May 1, 2007, LIU issued a commercial general
liability policy to Tractel (hereinafter "the LIU Policy").  (Id.
¶ 15.)  The LIU Policy had a per occurrence limit of up to $1
million and covered bodily injuries and property damage under
certain circumstances.  (Id.)  According to LIU, the policy was
intended to serve as an excess policy available to Tractel in the
absence of other insurance coverage.  (Id.)  The LIU Policy
contained a subrogation clause, which provided that:

> The Insurer shall be subrogated to all of the
> "Insured's" rights of recovery with respect to any
> payment made under this Policy.  In this regard, the
> "Insured" shall execute any documentation required to
> enforce such rights and shall co-operate in all
> respects with the Insurer to assist in the enforcement
> of such rights. The "Insured" shall do nothing to
> interfere with or impair the Insurer's right of
> subrogation. The Insurer shall have no right of
> subrogation against any "Insured" under this Policy.

(Id. ¶ 16.)

In September of 2006, the Marina District Development
Company, LLC ("MDD"), owners of the Borgata Hotel and Casino in
Atlantic City, New Jersey, hired Tractel to install window
washing scaffolding at the construction site for The Water Club

at the Borgata.  (Id. ¶ 21.)  Tractel, in turn, subcontracted

with Infinity on August 10, 2007 to install the window washing

scaffolding.  (Id.)  As part of the agreement between Tractel and

Infinity, Infinity agreed to fully indemnify and hold Tractel

harmless for any property damage or personal injuries related to

the Borgata construction project.  (Id. ¶¶ 11, 12.)  To

memorialize this agreement, Scottsdale issued certificates of

insurance to Tractel that reflected Tractel's status as an

additional insured under the Scottsdale Policy and its umbrella

excess policies.  (Id. ¶ 13.)  According to LIU, the contract

between Tractel and Infinity also provided that the Scottsdale

Policy would serve as the primary insurance policy, and that the

LIU Policy was secondary and would only be utilized to cover

claims in excess of the Scottsdale Policy's coverage limits.

(Id. ¶¶ 17, 19.)

On September 23, 2007, a fire occurred at the Borgata

construction site, resulting in damages in excess of $80,000,000.

(Id. ¶ 21.)  MDD alleged that the fire resulted from the welding

activities of an Infinity employee at the construction site.

(Id.)  As a result, MDD filed a lawsuit against Tractel,

Infinity, and other related parties in the Superior Court of New

Jersey in Atlantic County, alleging breach of contract and warranty, negligence, indemnification, and vicarious liability claims. (Id. ¶ 22.) Rather than immediately asking Infinity to hold it harmless and indemnify it in the state court action, Tractel tendered defense of the action to LIU pursuant to the terms of the LIU Policy. (Id. ¶ 23.) The claim against Tractel in the underlying state court action was subsequently settled, and LIU funded the settlement. (Id. ¶ 24.) LIU avers that it notified Scottsdale of the settlement negotiations and requested it to join the discussions and pay Tractel's share pursuant to the indemnity agreement between Tractel and Indemnity, but Scottsdale refused to do so. (Id.)

On December 1, 2011, MDD and Tractel filed a Joint Stipulation of Dismissal and Assignment of Claims agreement in the state court action. (Def.'s Mot. J. Pleadings, Ex. A.) Notably, the agreement stated as follows:

> Plaintiff Marina District Development d/b/a Borgata Hotel Casino & Spa (the "Borgata"), and Defendant Tractel, Ltd. ("Tractel"), by and through their counsel, herewith stipulate and agree as follows:
> . . .
> (3) Tractel and its insurers assign all claims and causes of action they have or may have against any defendant, cross-defendant and/or third-party defendant as a result of, arising from or related to the September 27, 2007 fire at The Water Club, including,

> but not limited to, the facts alleged in the Complaint,
> as amended, Tractel's responsive pleadings and/or the
> Third-Party Complaints.

(Id.)

As a result of the state court litigation and subsequent settlement, LIU paid $769,383.58 in defense fees and expenses on Tractel's behalf.  (Compl. ¶ 24.)  LIU claims that it has attempted to recover some of these costs from Infinity and Scottsdale pursuant to the additional insured provisions in the Scottsdale Policy and Infinity's umbrella policy, but Defendants have refused to pay.  (Id.)  LIU therefore filed the instant Complaint before this Court on August 6, 2012, asserting the following two counts against Defendants Scottsdale and Infinity: (1) a declaratory judgment requesting the Court to declare that Defendants had a duty to defend and indemnify Tractel for the underlying litigation and that LIU should be reimbursed for all amounts it paid and expenses incurred in conjunction with the underlying litigation; and (2) equitable indemnity and contribution pursuant to the indemnity agreement entered into between Tractel and Infinity.  Defendant Infinity filed the instant Motion for Judgment on the Pleadings on October 12, 2012, to which LIU responded in opposition on October 22, 2012.

Infinity replied on November 1, 2012.  Since the filing of the instant submissions, the parties have engaged in discovery.  As a result of issues unveiled during the discovery process, the parties requested and obtained the Court's permission to file supplemental briefing relating to the pending Motion, which they did on April 1 and 25, 2013, respectively.  Accordingly, the Motion is now ripe for judicial consideration.

## II.  JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute, which provides that: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between [c]itizens of different States[.]"  28 U.S.C. § 1331(a)(1).  Plaintiff LIU is a Canadian corporation with its principal place of business located in Toronto, Ontario, Canada.  Defendant Scottsdale is an Ohio corporation with its principal place of business located in Scottsdale, Arizona.  Defendant Infinity is a Minnesota limited liability company with its principal place of business in Saint Paul, Minnesota.  All of

Infinity's members are Minnesota citizens.[2]  As such, complete

diversity exists amongst the parties.  Moreover, the amount in

controversy in this dispute is alleged to exceed $75,000.

## III. STANDARD OF LAW

Rule 12(c) of the Federal Civil Rules provides that: "After

the pleadings are closed — but early enough not to delay trial —

a party may move for judgment on the pleadings."  Fed. R. Civ. P.

12(c).  The pleadings are considered to be "closed" after the

complaint and answer have been filed, along with any reply to

---

[2] Jurisdiction as pled in Plaintiff's Complaint is
deficient.  Specifically, Plaintiff did not identify the
citizenship of the members of Defendant Infinity.  The Third
Circuit has previously recognized that, for purposes of diversity
jurisdiction, "the citizenship of an LLC is determined by the
citizenship of each of its members." Zambelli Fireworks Mfg. Co.
v. Wood, 592 F.3d 412, 418 (3d Cir. 2010).  Since federal courts
have an independent obligation to address issues of subject
matter jurisdiction sua sponte and may do so at any stage of the
litigation, see id., the Court requested the parties to advise it
of the citizenship of the members of Defendant Infinity.  On May
15, 2013, the parties filed a "Joint Stipulation Regarding
Jurisdictional Facts." [Docket No. 43.] It is a well-known
principle of law, however, that parties cannot by stipulation
confer subject matter jurisdiction on the federal courts; nor can
a party consent to jurisdiction.  See Martin v. Wal-Mart Stores,
Inc., 709 F.Supp.2d 345, 350 n.5 (D.N.J. 2010)(Bumb, J.).
However, attached to the parties' stipulation are certifications
from corporate persons of the Plaintiff and Defendants that
certify under penalty of perjury that their representations as to
the parties' citizenship are true and correct and that the
parties are completely diverse from each other.  Accordingly, the
Court accepts the statements as to jurisdiction set forth in the
accompanying certifications.

additional claims asserted in the answer.  Horizon Healthcare

Servs. v. Allied Nat'l Inc., No.Civ.A.03-4098, 2007 U.S. Dist.

LEXIS 26352, at *9 (D.N.J. Apr. 10, 2007)(internal citations

omitted).  "'Under Rule 12(c), judgment will not be granted

unless the movant clearly establishes that no material issue of

fact remains to be resolved and that he is entitled to judgment

as a matter of law.'"  Id. (quoting Bayer Chem. Corp. v.

Albermarle Corp., 171 F. App'x 392, 397 (3d Cir. 2006); Jablonski

v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir.

1988)).  "A motion for judgment on the pleadings based on the

defense that the plaintiff has failed to state a claim is

analyzed under the same standards that apply to a Rule 12(b)(6)

motion."  Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134

(3d Cir. 2010) (citing Turbe v. Gov't of the V.I., 938 F.2d 427,

428 (3d Cir. 1991)).

A district court, in weighing a motion to dismiss pursuant

to Rule 12(b)(6), asks "'not whether a plaintiff will ultimately

prevail but whether the claimant is entitled to offer evidence to

support the claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S.

544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232,

236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953

(2009) ("Our decision in Twombly expounded the pleading standard
for 'all civil actions[.]'") (citation omitted).  First, under
the Twombly/Iqbal standard, a district court "must accept all of
the complaint's well-pleaded facts as true, but may disregard any
legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-
11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).  Second, a
district court "must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff has a
'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (citing
Iqbal, 129 S. Ct. at 1950).  "[A] complaint must do more than
allege the plaintiff's entitlement to relief."  Fowler, 578 F.3d
at 211; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224,
234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of
the pleading standard can be summed up thus: 'stating ... a claim
requires a complaint with enough factual matter (taken as true)
to suggest' the required element.  This 'does not impose a
probability requirement at the pleading stage,' but instead
'simply calls for enough facts to raise a reasonable expectation
that discovery will reveal evidence of' the necessary element.")
(citing Twombly, 550 U.S. at 556).  "The defendant bears the

burden of showing that no claim has been presented." Hedges v.
United States, 404 F.3d 744, 750 (3d Cir. 2005).

**IV. DISCUSSION**

In the instant Motion, Defendant Infinity argues that it is
entitled to judgment on the pleadings because any rights that
Plaintiff LIU may have at this point in time are limited by the
doctrine of equitable subrogation. Infinity further avers that,
as part of the Stipulation of Dismissal and Assignment of Claims
entered into between Tractel and MDD in the underlying
litigation, Tractel assigned to MDD its own and its insurers'
subsequent recovery rights. As such, Infinity argues that LIU
lacks standing to pursue the instant claims against it, and that
there is no case or controversy presently before the Court to
decide. In response, LIU argues that its claims are not
subrogated and that it seeks recovery in its own right under the
equitable theories of indemnity and contribution. LIU likewise
asserts that, even if its rights were subrogated, the present
situation nonetheless qualifies for an exemption from the general
rule of equitable subrogation. Finally, LIU alleges that Tractel
lacked the authority to assign LIU's rights to MDD when it

executed the Stipulation of Dismissal and Assignment of Claims in the underlying litigation.

## A.    Matters Outside the Pleadings

Prior to assessing the merits of this dispute, the Court considers the propriety and effect of Defendant's inclusion of documents outside the pleadings with respect to the instant Motion.  More specifically, Infinity attached to its Motion the Stipulation of Dismissal and Assignment of Claims filed in the underlying state court action.  LIU argues that this inclusion and reference to documents outside the pleadings is improper, and that the Court should refrain from considering any such matters at this stage of proceedings.

Ordinarily, when a motion to dismiss pursuant to Federal Civil Rules 12(b)(6) or 12(c) references documents outside the pleadings, it converts into a motion for summary judgment pursuant to Rule 12(d).  See Brown v. Wiener, No.Civ.A.04-3442, 2005 U.S. Dist. LEXIS 15610, at *4-5 (E.D. Pa. July 6, 2005) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993))(addressing motion for judgment on the pleadings pursuant

to Rule 12(c)); <u>Prudential Ins. Co. of Amer. v. Eisen</u>,
No.Civ.A.11-05872, 2012 WL 876747, at *3 (E.D. Pa. Mar. 15, 2012)
(citing <u>Phat Van Le v. Univ. of Med. & Dentistry of N.J.</u>,
No.Civ.A.09-2632, 2010 WL 1896415, at *4 (3d Cir. May 12,
2010))(further citation omitted)(addressing motion to dismiss
pursuant to Rule 12(b)(6)).  The Third Circuit has previously
recognized, however, that "a court may consider an undisputedly
authentic document that a defendant attaches as an exhibit to a
motion to dismiss if the plaintiff's claims are based on the
document." <u>Pension Benefit Guar. Corp.</u>, 998 F.2d at 1196
(internal citations omitted).  Morever, "a court may take
judicial notice of public records." <u>See</u> <u>Grynberg v. Total</u>
<u>Compagnie Francaise Des Petroles</u>, No.Civ.A.10-1088, 2012 WL
4095186, at *6 (D. Del. Sept. 18, 2012) (citing <u>M & M Stone Co.</u>
<u>v. Pa. Dep't. of Envt'l. Prot.</u>, 388 F. App'x 156, 162 (3d Cir.
July 28, 2010)).

Here, the stipulation and assignment agreement is a matter
of public record that was filed in the state court litigation.
It is well-established that courts "'may take judicial notice of
proceedings in other courts that relate to matters at issue.'"
<u>Fru-Con Constr. Corp. v. Controlled Air, Inc.</u>, 574 F.3d 527, 542

14

n.9 (8th Cir. 2009) (quoting Great Plains Tr. Co. v. Union Pac. R.R. Co., 492 F.3d 986, 996 (8th Cir. 2007)).  Moreover, despite Plaintiff's arguments to the contrary, the claims in its Complaint are related to the stipulation and assignment agreement.  Notably, the premise of Plaintiff's argument is that it defended Tractel in the underlying litigation and settlement, and that it incurred significant expenses for which it is entitled to reimbursement as a result: "LIU paid $769,383.58 in defense fees and expenses on Tractel's behalf.  The claims against Tractel in the underlying action were subsequently settled and LIU funded that settlement."  (See Compl. ¶ 24). Furthermore, although LIU objects to Defendant's use of the stipulation and assignment agreement, it does not dispute the authenticity of that document.

For these reasons, the Court will not convert Defendant's Motion for Judgment on the Pleadings into one for summary judgment.  Furthermore, because the Court finds that Plaintiff's claims are based on the stipulation and assignment agreement and that the actual text of this document is helpful and relevant here, it likewise will not strike the document from the record.

**B.   The Doctrine of Equitable Subrogation and Equitable Principles of Indemnity and Contribution**

Defendant Infinity argues that Plaintiff LIU's basis for seeking recovery from it stems entirely from the doctrine of equitable subrogation, and that LIU is therefore precluded from obtaining any recovery from it. Infinity further alleges that LIU lacks standing to bring the instant lawsuit against it because Tractel assigned to MDD its own and its insurers' rights to bring any future causes of action related to the 2007 fire at the Borgata in the stipulation and assignment agreement. In response, LIU argues that it is not bound by the terms of the agreement because Tractel lacked the authority to bind it to this contract. LIU likewise avers that, in any event, its present cause of action is not subject to equitable subrogation, but rather is based upon independent claims for indemnity and contribution asserted by LIU in its own right for its own losses.

In general, two avenues of recovery are available to an insurer following its reimbursement of its insured for a loss: (1) equitable subrogation; or (2) equitable contribution and indemnity. Low v. Golden Eagle Ins. Co., 101 Cal. App. 4th 1354, 1361 (Cal. App. 2002)(internal citation omitted).[3] The two

---

[3] Although Low is a California state court case and therefore is in no way binding upon this federal Court sitting in New Jersey, its generalized discussion of the equitable doctrines at issue here is relevant to the instant dispute, and the Court

equitable doctrines are distinct legal concepts; governed by separate bodies of law and resulting in different recovery rights.

New Jersey law defines "subrogation" as: "'[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities.'" Feigenbaum v. Guaracini, 402 N.J. Super. 7, 19-20 (N.J. Super. 2008) (quoting Hanover Ins. Co. v. Borough of Atl. Highlands, 310 N.J. Super. 599, 603 (N.J. Super. 1997)) (further citation omitted). Subrogation is an equitable doctrine intended "'to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it'" and serves to "promote 'essential justice' between the parties." Feigenbaum, 402 N.J. Super. at 20 (quoting Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171 (N.J. 1954); Hayes v. Pittsgrove Twp. Bd. of Educ., 269 N.J. Super. 449, 454-55 (N.J. Super. 1994)) (further citation omitted). Importantly, under the doctrine, the subrogee's rights cannot rise higher than those of the subrogor. Id. Rather, "the subrogee, who succeeds to the position of the subrogor, may

_____

therefore cites to it as persuasive authority.

recover only if the subrogor likewise could have recovered [in that instance, and] the subrogee gains no additional rights and is subject to all defenses that were available to the subrogors." Id. (internal citations & alteration of text omitted). Put simply, "in a subrogation action[,] an insurer steps into the shoes of its insured." Am. Fire & Cas. Co. v. Material Handling Supply, Inc., No.Civ.A.31574, 2007 U.S. Dist. LEXIS 31574, at *4-6 (D.N.J. Apr. 27, 2007) (citing Montefusco Excavating & Contracting Co., Inc. v. Middlesex Co., 82 N.J. 519, 523 (1980); Dome Petroleum Ltd. v. Emp. Mut. Liab. Ins. Co. of W.I., 776 F. Supp. 970, 985 (D.N.J. 1991)).

The subrogation doctrine is frequently utilized in the insurance context. See In re Compl. of Weeks Marine, Inc., No.Civ.A.04-0494, 2006 U.S. Dist. LEXIS 52838, at *12 (D.N.J. Aug. 1, 2006) (internal citations omitted). "The right to stand in the insured's shoes and to collect from the tortfeasor once it has paid the insured an amount representing the tortfeasor's debt is called the insurer's right to subrogation." Erie Ins. Exch. v. Celina Mut. Ins. Co., No.Civ.A.90-6831, 1991 U.S. Dist. LEXIS 10438, at *13 (E.D. Pa. July 24, 1991) (internal citation omitted). "It most often comes into play in cases in which an

insurer who has indemnified an insured for damage or loss is subrogated to any rights that the insured may have against a third party, who is also liable for the damage or loss." Id. (internal citation & quotation marks omitted). Upon paying a claim to the insured, an insurer may step into the shoes of its insured and obtain reimbursement from a tortfeasor responsible for the loss. Am. Fire & Cas. Co., 2007 U.S. Dist. LEXIS 31574 at *5. The insurer, however, is limited to the rights available to the insured, and is likewise subject to all defenses that could have been asserted directly against the insured. Id. In other words, if the insured has already been made whole through payment of its claim by its insurer, the insurer may then sue any tortfeasor that may have been responsible for the loss, but must do so from the insured's perspective. Any funds recovered from the tortfeasor will serve to reimburse the insurer.[4] The insurer

---

[4] This, of course, assumes that the insured has already been made whole by the insurer. It is well established that an insured must first be made whole before its insurer is entitled to reimbursement. Weeks Marine, Inc., 2006 U.S. Dist. LEXIS 52838 at *14. Furthermore, "an insured is not liable to the insurer for moneys received from a tortfeasor, where the total of the insured's recovery from both the insurer and the tortfeasor does not exceed the insured's loss." Id. (internal citation, quotation marks, & alteration of text omitted). "If an insured receives payment from an insurer for part, but not all of its damages, and later pursues an action against a third party tortfeasor, any amount the insured recovers in excess of its actual damages will be available to the insurer in an action for

is entitled to reimbursement in such instances because allowing
otherwise would either unjustly enrich the insured by virtue of a
recovery from both the insurer and the tortfeasor, or, in the
absence of such double recovery, the tortfeasor could walk free
despite bearing a legal obligation in connection with the loss.
Id. at *12 (internal citation & quotation marks omitted).  The
insurer may not, however, attempt to directly recover from the
tortfeasor in this context — it must assume the position that the
insured would have occupied had it actually pursued the
tortfeasor itself.  Indeed, the Second Circuit Court of Appeals
has recognized that: "[t]here is not a single reported case in
American jurisprudence . . . which holds that[,] upon an
insurance carrier's payment to its insured, the insurer becomes
vested with a claim arising out of an implied contract of
indemnity with the tortfeasor who caused the damage necessitating
payment by the carrier to the insured."  Great Am. Ins. Co. v.
United States, 575 F.3d 1031, 1033 (2d Cir. 1978).  The insurer
cannot recover from the tortfeasor in such situations because its
injury or loss — as the subrogee of the subrogor insured — is too
remote and not proximately caused by the tortfeasor's acts.  N.J.
Carpenters Health Fund v. Philip Morris, Inc., 17 F.Supp.2d 324,
_____
reimbursement." Id. (internal citation omitted).

330 (D.N.J. 1998)(Barry, J.)(internal citations omitted)
(overruled on other grounds by Steamfitters Local Union No. 420
Welfare Fund v. Philip Lorris, Inc., 171 F.3d 912, 928 (3d Cir.
1999))("Courts have consistently disallowed such direct recovery,
holding that because the tortfeasor directly harmed the insured
individual, the insurer's damages were too remote to be recovered
in a direct action.").  Furthermore, while the doctrine of
equitable subrogation permits an insurer that paid a debt for
which another insurer is primarily liable to sue the other
insurer on the grounds that it has failed to pay, it also may
only do so from the perspective of the insured.  Fireman's Fund
Ins. Co. v. Commerce & Indus. Ins., No.Civ.A.98-1060, 2000 U.S.
Dist. LEXIS 17688, at *9 (N.D. Cal. Nov. 13, 2000).

Unlike subrogation, an insurer's rights to equitable
indemnity and contribution exist independently of the insured's
rights.  See Potomac Ins. Co. of Ill. v. Pa. Mfg. Assoc. Ins.
Co., 41 A.3d 586, 596 (N.J. Super. 2012) (citing Fireman's Fund
Ins. Co. v. Md. Cas. Co., 77 Cal. Rptr. 2d 296, 303-05 (1998));
Great Am. Ins, Co., 575 F.2d at 1033-34.  Stated differently,
when seeking indemnity or contribution, an insurer need not step
into the shoes of the insured, but rather can remain grounded in

its own footwear. "Indemnity" is legally defined as:
"[r]eimbursement or compensation for loss, damage, or liability
in tort; esp., the right of a party who is secondarily liable to
recover from the party who is primarily liable for reimbursement
of expenditures paid to a third party for injuries resulting from
a violation of common-law duty." Black's Law Dictionary 784 (8th
ed. 2004); see also Holbrook v. Woodham, No.Civ.A.05-304, 2009
U.S. Dist. LEXIS 11138, at *26 (W.D. Pa. Feb. 13, 2009).
"Indemnity involves reimbursement in full of one who has
discharged a common liability. . . . [I]t is a fault shifting
mechanism, operable only when a defendant who has been held
liable to a plaintiff solely by operation of law, seeks to
recover his loss from a defendant who was actually responsible
for the accident which occasioned the loss." Id. at *26-27
(internal citation omitted). Similarly, "contribution" is
legally defined as: "[t]he right that gives one of several
persons who are liable on a common debt the ability to recover
proportionately from each of the others when that one person
discharges the debt for the benefit of all[.]" Black's Law
Dictionary 352-53 (8th ed. 2004); see also Holbrook, 2009 U.S.
Dist. LEXIS 11138 at *27; In re W.R. Grace & Co., 468 B.R. 81,

371-72 n.153 (D. Del. 2012).  Claims for indemnity and

contribution are frequently jointly asserted by parties, and are

therefore commonly assessed in tandem by the courts.  Holbrook,

2009 U.S. Dist. LEXIS 11138 at *27.[5]

Claims for indemnity and contribution are also common in the

insurance context.  Most typically, these rights are invoked in

instances when two or more insurers independently provided

coverage for the same risk to the same insured, but one insurance

carrier primarily undertook the defense or indemnification of the

common insured in excess of its proportionate share of the loss.

See Potomac, 41 A.2d at 596-97 (citing Fireman's Fund, 77 Cal.

Rptr. 2d at 301-05).  In this sense, the recovery rights of the

insurer that primarily undertook the defense or indemnification

---

[5]  It is worth noting that, although indemnity and
contribution are commonly jointly interpreted, there are
fundamental distinctions between the two theories of recovery.
See Holbrook, 2009 U.S. Dist. LEXIS 11138 at *27-28; 18 Am. Jur.
2d Contribution § 2 (2012).  However, for purposes of the instant
discussion, the distinction between indemnity and contribution is
not of primary concern.  Rather, the parties' arguments center on
LIU's claims for indemnity and contribution as opposed to
Defendant's subrogation claims.  Moreover, it has previously been
recognized that equitable principles of indemnity and
contribution are both distinct from the doctrine of equitable
subrogation.  See Great Am. Ins. Co., 575 F.2d at 1033-34;
Potomac, 41 A.2d at 596.  The Court, therefore, need not engage
in a lengthy discussion of the distinctions between indemnity and
contribution, and can jointly consider them in juxtaposition to
subrogation.

of the common insured are not sought from "the party *primarily*

liable for the loss, but from a *co-obligor* who *shares* such

liability with the party seeking contribution." <u>Potomac</u>, 41 A.2d

at 596 (quoting <u>Fireman's Fund</u>, 77 Cal. Rptr. 2d at 303)

(emphasis in original); <u>see also</u> <u>Great Am. Ins. Co.</u>, 575 F.2d at

1033-34.

In differentiating between the subrogation doctrine and

contribution principles, it has previously been recognized that:

> Th[e] right of equitable contribution belongs to each
> insurer individually.  It is not based on any right of
> subrogation to the rights of the insured, and is not
> equivalent to "standing in the shoes" of the insured.
> Instead, the reciprocal contribution rights of
> coinsurers who insure the same risk are based on the
> equitable principle that the burden of indemnifying or
> defending the insured with whom each has independently
> contracted should be borne by all the insurance
> carriers together. . . . Unlike subrogation, the right
> to equitable contribution exists independently of the
> rights of the insured.  It is predicated on the
> commonsense principle that[,] where multiple insurers
> or indemnitors share equal contractual liability for
> the primary indemnification of a loss or the discharge
> of an obligation, the selection of which indemnitor is
> to bear the loss should not be left to the often
> arbitrary choice of the loss claimant, and no
> indemnitor should have any incentive to avoid paying a
> just claim in the hope the claimant will obtain full
> payment from another coindemnitor.  Equitable
> contribution thus assumes the existence of two or more
> valid contracts of insurance covering the particular
> risk of loss and particular casualty in question.

Potomac, 41 A.2d at 596 (quoting Fireman's Fund, 77 Cal. Rptr. 2d
at 303). Similar differences have been highlighted between the
subrogation doctrine and indemnity principles. See Great Am.
Ins. Co., 575 F.3d at 1033-34. As such, in the common situation
where an insurer assumes defense of its insured in a lawsuit
related to a risk covered by their insurance agreement, the
insurer is precluded from subsequently asserting a direct claim
for reimbursement under the doctrine of subrogation. That same
insurer may, however, seek recovery from other insurers that
likewise provided coverage to the insured for that particular
risk under the theories of equitable contribution and indemnity.

In order to determine which equitable theory of recovery
applies to the instant case, the relationships of the various
parties must first be made clear. Tractel purchased an insurance
policy from LIU. The LIU Policy contained a subrogation clause,
which provided that, when representing Tractel in the litigation
of any claim, LIU "shall be subrogated to all of [Tractel's]
rights of recovery with respect to any payment made under this
Policy." (Compl. ¶ 16.) Thus, LIU and Tractel's relationship
was premised upon principles of subrogation. On the other hand,
Tractel and Infinity — its subcontractor and a non-insurer — had

an indemnity contract according to which Infinity agreed to hold
harmless and indemnify Tractel for any losses and injuries
resulting from its work on the Borgata project.  Therefore, the
relationship between Tractel and Infinity was not predicated upon
subrogation, but rather was premised upon a contractual agreement
of indemnity.  Thus, Tractel served as the common link between
Infinity and LIU — there was no direct relationship between these
two entities.  In the underlying litigation related to the
Borgata fire, MDD — the injured party — brought suit against both
Tractel and Infinity.  At this point, Tractel had two options:
(1) tender its defense to LIU per the terms of the LIU Policy, or
(2) invoke the indemnification clause of its contractual
indemnity agreement with Infinity.  Tractel chose to tender its
defense to LIU.  As a result, the subrogation doctrine thereafter
controlled the situation.  In an effort to resolve the underlying
dispute, Tractel (represented by LIU counsel) and MDD eventually
entered into a Joint Stipulation of Dismissal and Assignment of
Claims.  Infinity (and Scottsdale, for that matter) were not
parties to this agreement.  Under the stipulation and assignment
agreement, Tractel (through LIU counsel) assigned to MDD any and
all future claims that Tractel and its insurers may have against

any of the co-defendants in the Borgata litigation, *i.e.*,
Infinity.

First, LIU's present direct claim against Infinity for
indemnity and contribution fails because these rights are only
available when multiple *insurers or indemnitors* share equal
contractual liability for the primary indemnification of a loss
or the discharge of an obligation.[6]  See Potomac, 41 A.2d at 596
(quoting Fireman's Fund, 77 Cal. Rptr. 2d at 303); Liberty Mut.
Ins. Co. v. Lumbermens Mut. Cas. Co., No.Civ.A.06-6689, 2008 U.S.
Dist. LEXIS 60596, at *12-13 (N.D. Ill. July 25, 2008) (internal
citation omitted)("Equitable contribution is only available where
different policies insure the same entities, the same interests,
and the same risks."); Fireman's Fund Ins. Co. v. Commerce &

---

[6] It also remains unclear why LIU waited until the present
to seek indemnity and contribution from Defendants when it had
the opportunity to immediately do so by invoking the terms of its
indemnity agreement upon initially discovering that Tractel and
Infinity were both being sued by MDD.  Although it was certainly
within its rights to do so, Tractel instead decided to tender its
defense to LIU per the LIU Policy.  In fact, in the Complaint,
LIU readily admits that: "While Tractel should have asked
Infinity to hold it harmless against the claims brought by MDD,
it tendered defense of the underlying action to LIU under its
general liability policy."  (Compl. ¶ 23.)  Had it not done so,
it would not have subjected itself to the subrogation clause in
the LIU Policy, but rather would have been deemed an "additional
insured" per the terms of the Scottsdale Policy.

<u>Indus. Ins. Co.</u>, No.Civ.A.98-1060, 2000 U.S. Dist. LEXIS 17688, at *7 (N.D. Cal. Nov. 13, 2000)(internal citations omitted)("A claim under equitable contribution arises when one co-insurer has paid more than its proportionate share of the loss.  Although such an insurer has a direct claim against its co-insurers for proportionate reimbursement, the right to equitable contribution arises only when all of the insurance carriers share the same level of obligation on the same risk as to the same insured.").  LIU presently seeks to recover indemnity and contribution from Infinity — Tractel's co-defendant in the underlying litigation.  Infinity does not, however, maintain a co-insurer or co-indemnitor relationship with LIU.  To be clear, it is not an insurance carrier that likewise insured Tractel for the same risk as that covered by the LIU Policy.  Nor is there any indemnity agreement in existence between LIU and Infinity.  Given the lack of such relationships, LIU is precluded from obtaining indemnity and contribution from Defendant Infinity.[7]

Furthermore, under the present circumstances, LIU itself cannot now bring a direct claim against Infinity due to

_____

[7]  In so holding, the Court makes no findings with respect to LIU's rights to indemnity and contribution from Defendant Scottsdale.  Scottsdale is not a party to the instant Motion.

principles of equitable subrogation.  As discussed above, it is
well-recognized in the subrogation context that, if the
underlying action has been resolved and the insured has been made
whole by its insurer, the insurer may only pursue recovery from a
tortfeasor from the stance of the insured and may not attempt to
itself recover from the tortfeasor directly.  See Great Am. Ins.
Co. v. United States, 575 F.2d 1031, 1033 (2d Cir. 1978); Philip
Morris, Inc., 17 F.Supp.2d at 330.  Here, LIU agreed to assume
Tractel's defense per the terms of the LIU Policy, which
contained a subrogation clause stating that LIU's recovery rights
would be limited to any rights that Tractel itself could recover.
(Compl. ¶ 16.)  As soon as Tractel tendered its defense to LIU in
the underlying litigation, it invoked this subrogation clause and
LIU's reimbursement from Infinity was subrogated to any recovery
Tractel could have obtained from Infinity directly.  Tractel,
however, subsequently assigned away its own, as well as its
insurers', rights to pursue any further causes of action stemming
from the Borgata fire when it entered into the stipulation and
assignment agreement with MDD.  Thus, based on this assignment of
rights, Infinity presently argues that LIU can no longer pursue

any claims against it because its subrogation rights have been assigned to MDD.

It is important to recognize, however, that there is an exception to the general rule of subrogation requiring an insurer to stand in the shoes of its insured. Under the exception, if a tortfeasor or his insurance carrier had knowledge of the insurer subrogee's recovery interest prior to a release from liability in a settlement or like agreement, the insurer subrogee may bring an action directly against the tortfeasor without having to assume the position of the insured subrogor. See <u>Melick v. Stanley</u>, 416 A.2d 415, 420-21 (N.J. Super. 1980).[8] In the instant case, LIU

---

[8] The following hypothetical is useful in explaining how the exception typically operates in most scenarios: Injured A brings suit against Tortfeasor B. Both parties maintain coverage from their respective insurers, Insurer A and Insurer B, and Insurer A has assumed the defense of its insured, Injured A, in the underlying litigation. Injured A and Tortfeasor B eventually settle, and, under the terms of the settlement agreement, agree to release Tortfeasor B and Insurer B from further liability related to the lawsuit. Under the doctrine of subrogation, once Injured A is made whole by Insurer A, Insurer A can then pursue Tortfeasor B for reimbursement from the same position that Injured A would have occupied. If Tortfeasor B or Insurer B knew that Insurer A would subsequently seek reimbursement from one or both of them and crafted the release provision so as to prevent this from occurring, however, then, under the exception, Insurer A can pursue Tortfeasor B and Insurer B directly because allowing otherwise would permit a fraud to occur.

asserts that, even assuming its rights were subrogated to

Tractel, this exception would apply and it could therefore pursue

Infinity for reimbursement directly.  More specifically, LIU

avers that, during discovery,[9] Infinity admitted in its responses

to requests for admissions that its counsel in the underlying

litigation knew prior to the execution of the stipulation and

assignment agreement that LIU or Tractel had requested Infinity

to fund Tractel's settlement and had requested Infinity to

reimburse LIU for amounts it paid in connection with Tractel's

defense because Infinity's counsel had been copied on

correspondence exchanged between Scottsdale, LIU, and Tractel

during this time.[10]    (Pl.'s Supp. Reply, Ex. A, ¶ 15.)  LIU thus

---

[9] Following the conclusion of the briefing period for the
Motion for Judgment on the Pleadings, the parties engaged in
discovery.  During discovery and while the Motion remained
pending, LIU served its requests for admissions on Infinity,
wherein the above-discussed admission was disclosed.  In light of
this new information, LIU sought and obtained the Court's
permission to file a supplemental brief. [Docket No. 35.]
Infinity thereafter likewise sought and obtained leave to file a
supplemental brief responding to this new information.  [Docket
No. 41.]

[10] More specifically, the admission stated as follows:

Responding party admits that its defense counsel in the
underlying action was informed prior to November 30, 2011
of the requests being made by propounding party and/or
Tractel for responding party to fund Tractel's settlement
in the underlying action and/or to reimburse propounding

argues that, because Infinity and Scottsdale were aware of its future intent to seek reimbursement when the assignment clause was drafted, its rights against Infinity are not subrogated and therefore are not assignable.

For several reasons, however, the exception to the general rule of subrogation does not apply to this case. First, Infinity was not a party to the stipulation and assignment agreement, nor was it in any way involved in the drafting of the assignment provision that presently roadblocks LIU from pursuing it. Rather, the agreement was entered into between MDD and Tractel, who was represented by LIU. The purpose behind the exception is to prevent fraud that may occur by allowing parties to craft provisions in settlement agreements that serve as bars from subsequent liability. <u>See</u> <u>Potomac</u>, 41 A.3d at 599-600; <u>Lexington Ins. Co. v. Sentry Select Ins. Co.</u>, No.Civ.A.08-1539, 2009 WL 1586938, at *12 (E.D. Cal. June 5, 2009); <u>Guardian Ins. Co. v. Hussein</u>, No.Civ.A.2000-216, 2002 WL 31017161, at *2 (D.V.I. Sept.

---

party for amounts allegedly paid in connection with Tractel's underlying defense and indemnity, as its defense counsel had been copied with various correspondence exchanged between responding party's insurer, propounding party and/or Tractel's defense counsel in the underlying litigation.

(Pl.'s Supp. Reply, Ex. A, ¶ 15.)

4, 2002)(internal citations omitted). By this logic, the exception could arguably apply in the instant case if tortfeasor Tractel or its insurer LIU had been responsible for the drafting of a provision in the agreement that would fraudulently shield them from further liability. This theory is nonsensical here, however, because LIU presently seeks exemption from the provision that its own counsel drafted and executed. It therefore strains credulity to presume that Tractel, represented by LIU counsel, would have drafted a provision that defrauded LIU or served to usurp its future rights of recovery.

Second, the exception to the general rule of subrogation applies in circumstances in which a release provision is at issue. The clause at issue in the instant case is an assignment of rights provision — not a release provision. Under the assignment provision here, any future rights and causes of action related to the underlying litigation that Tractel and its insurers may have were transferred to MDD. Thus, if the Court were to presently find that the exception applied under these circumstances, then Infinity could theoretically be subjected to double liability since LIU could sue it directly and MDD could sue it indirectly by way of assignment. In contrast, had the

provision in the stipulation been a release — rather than assignment — provision, only LIU could pursue Infinity under the exception. Thus, the difference between the type of clause involved here is dispositive. Accordingly, for the reasons expressed above, the exception to the general rule requiring an insurer to step into its insured's shoes when pursuing recovery rights does not apply under these circumstances.

Since the exception does not apply, LIU remains limited to its subrogation rights, *i.e.*, any rights that Tractel could have asserted for its own benefit had it not been compensated by LIU. As stated above, however, Tractel assigned away its rights to pursue any further claims related to the underlying litigation in the stipulation and assignment agreement to MDD. As such, there is no longer a recovery right for LIU to pursue from Tractel's perspective. In fact, not only did Tractel assign away its own rights in the stipulation and assignment agreement, but likewise assigned to MDD any future claims that "its insurers" may have held: "Plaintiff [MDD] and Defendant Tractel . . . by and through their counsel, herewith stipulate and agree [that] Tractel and its insurers assign all claims and causes of action they have or may have against any defendant, cross-defendant and/or third-

party defendant[.]" (Def.'s Mot. J. Pleadings, Ex. A.)  Infinity
presently relies on this clause to argue that LIU lacks standing
to assert the instant claims against it, and that MDD, as the
assignee, is the only entity that now can bring claims against it
related to the Borgata fire.  On its part, LIU argues that it is
not bound by the terms of the stipulation and assignment
agreement because it was not a party to that contract, and that
Tractel lacked the authority to bind LIU, a non-party, to such an
agreement.  Infinity responds that, although LIU may not have
been a direct party to the assignment, it nevertheless was aware
of and played a role in its execution because counsel
representing Tractel at this time were LIU attorneys retained for
the purpose of defending Tractel and funding the settlement in
the underlying action.  Thus, following Infinity's logic, LIU's
own attorneys would not have included it in the language of the
assignment provision had they lacked the authority to do so.

An assignment is the transfer of rights held by one party —
the assignor — to another party — the assignee.  "[A]bsent a
provision stating otherwise, assignment . . . will result in the
assignee stepping into the shoes of the assignor with regard to
the rights that the assignor held and not in an expansion of

those rights to include those held by the assignee." <u>Medtronic</u>

<u>AVE Inc. v. Advanced Cardiovascular Sys.</u>, 247 F.3d 44, 60 (3d

Cir. 2001). An assignment "is a separate agreement between the

assignor and the assignee which merely transfers the assignor's

[] rights, leaving them in full force and effect as to the party

charged." <u>Id.</u> (citing <u>Citibank, N.A. v. Tele/Res., Inc.</u>, 724

F.2d 266, 269 (2d Cir. 1983)). Moreover, an assignment contract

— just like any other contract — must be free and clear of

ambiguity in order to be enforceable. <u>See</u> <u>D&D Assocs., Inc. v.</u>

<u>Bd. of Educ. of N. Plainfield</u>, No.Civ.A.03-1026, 2012 WL 1079583,

at *25 (D.N.J. Mar. 30, 2012). The Third Circuit has previously

recognized that: "A contract is unambiguous if the court, without

looking to extrinsic evidence, can determine [its] meaning . . .

[On the other hand,] [a] contract is ambiguous if, based on its

language alone, it is reasonably susceptible of more than one

interpretation. Whether a contract is ambiguous depends on the

meaning assigned to words or phrases in accordance with the

apparent purpose of the contract as a whole." <u>Gleason v. Norwest</u>

<u>Mortg., Inc.</u>, 243 F.3d 130, 138-39 (3d Cir. 2001)(applying

principles of New Jersey law).

Here, it remains unclear whether Tractel, represented by LIU attorneys during settlement negotiations, had the authority and permission to include LIU in the assignment provision of the stipulation and assignment agreement. According to LIU, counsel only sought to bind the subrogor, Tractel. There is merit to LIU's argument that it would be nonsensical to assume that LIU counsel would have drafted a provision that would thwart its ability to recover from Infinity and Scottsdale in the future. Moreover, the text of the actual assignment provision itself is unclear as to its intended scope. On the one hand, the express language of the clause states that: "Tractel *and its insurers* assign all claims or causes of action they may have" related to the Borgata fire to MDD. (Def.'s Mot. J. Pleadings, Ex. A)(emphasis added). Presumably, as one of Tractel's insurers, LIU would be included within the scope of this contractual language. On the other hand, however, the provision does not specifically refer to Infinity, or, for that matter, even identify LIU as one of the "insurers" bound by the agreement. Nor does the assignment provision make any reference to subrogation rights or claims for indemnity and contribution. Instead, it is an open-ended and untailored clause lacking

specificity as to its breadth and intended scope.  As such, the
import of the assignment clause is not an issue amenable to
determination at this early stage of proceedings.  The fog of
ambiguity surrounding the drafting of the assignment provision
may no doubt clear during further discovery when the parties —
and the Court — have more information available to them.[11]  As
such, the Court therefore will not enter a judgment on the
pleadings against LIU at this point in time.

_____

[11] Indeed, the Court notes that insurance contracts typically
contain anti-assignment provisions that bar assignment of rights.
See Somerset Orthopedic Assoc., P.A. v. Horizon Blue Cross & Blue
Shield of N.J., 785 A.2d 457, 460 (N.J. Super. 2001); Garden
State Bldgs., L.P. v. First Fid. Bank, N.A., 702 A.2d 1315, 1322
(N.J. Super. 1997); Caldwell Trucking PRP Grp. v. Spaulding
Composites Co., Inc., 890 F.Supp. 1247, 1256-61 (D.N.J. 1995).
It is well-established that contract rights are typically
assignable, unless the contract contains language expressly
prohibiting the assignment.  See id. at 1259 (citing Chelsea-
Wheeler Coal Co. v. Marvin, 28 A.2d 505 (1942)) (further citation
omitted); Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435,
442 (3d Cir. 1999)(applying New Jersey law); Owen v. CNA
Ins./Cont'l Cas. Co., 771 A.2d 1208, 1218 (N.J. 2001).  WILLISTON
ON CONTRACTS 4th, §§ 74F:54-73.

As noted above, this matter is still in the early stage of
proceedings and discovery remains ongoing.  In fact, neither
party has yet provided copies of the relevant insurance policies
to the Court for review.  Accordingly, it remains unclear at this
point in time whether the LIU Policy contained an anti-assignment
or other similar provision that would have barred the assignment
of rights.  Thus, the possibility of such a provision and the
lack of the availability of the actual insurance policies for the
Court's review further evinces why dismissal of this case would
be premature at this point in time.

## V.    CONCLUSION

For the reasons set forth above, Defendant Infinity's Motion for Judgment on the Pleadings shall be denied.  An appropriate Order follows.


                                        */s/ Noel L. Hillman*
                                        _____
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.


Dated:  __06/27/2013__