IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LIBERTY INTERNATIONAL UNDERWRITERS CANADA,<br><br>                Plaintiff,<br><br>   v.<br><br>SCOTTSDALE INSURANCE COMPANY, et al.,<br><br>                Defendants. | Civil No. 12-4934 (NLH/JS) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This Opinion addresses the parties' discovery dispute involving defendants' request for documents plaintiff claims are protected by the attorney-client privilege and/or work-product doctrine.[1] Plaintiff Liberty International Underwriters Canada ("Liberty") is seeking to recover from Scottsdale $1 million plus attorney's fees that Liberty paid in November 2011 to settle a lawsuit wherein it was alleged that Liberty's insured, Tractel, Inc., started a fire at the Borgata. Defendants insist, <u>inter alia</u>, that this lawsuit is barred by the terms of the Settlement Agreement Tractel entered into with the Borgata. The subject discovery dispute centers on defendants' insistence that they are entitled to see Liberty's communications with its attorneys and the attorneys representing Tractel regarding

---

[1] The defendants are Scottsdale Insurance Company ("Scottsdale") and Infinity Access LLC ("Infinity").

negotiations over the terms of the Tractel/Borgata Settlement Agreement. Liberty argues the requested documents are protected and do not have to be produced. As will be discussed, the Court decides that some but not all of the documents at issue should be produced.

Background

On September 23, 2007, a fire occurred at the Borgata construction site in Atlantic City, New Jersey. At the time, the owners of the Borgata had hired Tractel to install window washing scaffolding. Tractel, in turn, subcontracted the work to Infinity. After the fire Borgata filed a complaint seeking damages from the parties allegedly responsible for the fire, including Tractel. (Hereinafter "Borgata litigation.") Liberty insured Tractel and paid its defense costs in the underlying litigation ($769,383.58). Eventually, Borgata and Tractel settled for $1 million and Liberty paid the settlement sum. In this action Liberty seeks to recover $1,769,383.58 from Infinity and Infinity's insurer, Scottsdale, which represents the indemnity and defense costs Liberty paid on Tractel's behalf in the Borgata litigation.

In August 2011, Liberty agreed in principal to pay $1 million to settle Borgata's claim against Tractel.[2] From that

---

[2] On August 16, 2011, Borgata and Tractel filed with the Superior Court of New Jersey Law Division, Atlantic County, a "Joint Notice of Settlement." The Notice advised the Court that the parties "reached an agreement in principle

time until November 2011, the attorneys for Borgata and Tractel exchanged different drafts of a "Confidential Mutual Release and Settlement Agreement." Liberty was kept abreast of the negotiations by Tractel's attorneys and its own counsel that it separately retained. The final Settlement Agreement between Tractel and the Borgata was signed on November 22, 2011.

Defendants allege that pursuant to the terms of the Agreement Tractel assigned its claims and causes of action arising from the Borgata fire to the Borgata.[3] Defendants also cite to the language in the November 30, 2011 "Joint Stipulation of Dismissal With Prejudice and Assignment of Claims Between Plaintiff and Defendant Tractel, Ltd." filed with the Superior Court which reads:

> Tractel and its insurers assign all claims and causes of action they have or may have against any defendant, cross-defendant and/or third-party defendant as a result of, arising from or related to the September 27, 2007 fire at The Water Club, including, but not limited to, the facts alleged in the Complaint, as amended, Tractel's responsive pleadings and/or Third-Party Complaints.

---

to settle all claims asserted against Tractel." April 29, 2014 Letter Brief ("LB"), Exhibit 1.

[3] The actual assignment language in paragraph 5 of the Settlement Agreement reads:
   5. <u>Extinguishment and/or Assignment of Tractel's Claims</u>

   . . .

   > (b) Tractel and/or any insurer of Tractel, hereby assigns any and all actions, causes of action, claims, suits, … they have or may have against the defendants … in the [Borgata] Litigation.

Based on the Tractel/Borgata assignment language, defendants argue that Liberty lacks standing to pursue this case since the rights of Liberty's insured, Tractel, were assigned to the Borgata. Not unexpectedly Liberty denies this assertion and argues, inter alia, it was not a party to the assignment and/or Settlement Agreement and that Tractel lacked the authority to assign Liberty's rights to Borgata. Defendants respond by arguing, inter alia, that although Liberty was not a party to the Settlement Agreement that contained the assignment, Liberty was aware of and acquiesced in the execution of the Agreement.

On June 28, 2013, the Honorable Noel L. Hillman denied defendants' Motion for Judgment on the Pleadings. 955 F. Supp. 2d 317 (D.N.J. 2013). Judge Hillman held, inter alia, that it was unclear whether Tractel had the authority and permission to include Liberty in the assignment provision. Id. at 333. Judge Hillman also held that "the text of the actual assignment provision itself is unclear as to its intended scope." Id. As such, Judge Hillman noted, "the import of the assignment clause" was not yet ripe for decision. Id. Judge Hillman anticipated that discovery on these issues would be taken. ("The fog of ambiguity surrounding the drafting of the assignment provision may no doubt clear during further discovery when the parties—and the Court—have more information available to them." Id.)

Although Liberty vigorously denies defendants' defense that the assignment language bars its claim, there is no question that defendants are entitled to relevant discovery on the issue. See Fed. R. Civ. P. 26(b)(1)(parties may obtain discovery regarding any non-privileged matter relevant to any party's claim or defense). The parties recognize this fact since defendants deposed Robert Philpott (August 15, 2013, October 23, 2013), Martin Premru (October 24, 2013) and Scott Ford (October 24, 2013), about the assignment language.[4] Nevertheless, defendants want more. They argue the deposition testimony they obtained regarding the assignment language is incomplete, evasive, "and left unanswered multiple questions concerning the critical facts surrounding the negotiations and drafting of the Settlement Agreement, and in particular, the assignment provision." April 9, 2014 Letter Brief ("LB") at 2. Defendants want to see the emails exchanged between and amongst Philpott, Tractel's counsel, and Infinity's counsel, to get a complete picture of what Liberty knew and did not know, and what Liberty authorized and did not authorize. Liberty argues the deposition testimony to date is complete and defendants are not entitled to additional discovery regarding the execution of the Settlement Agreement. Although the parties do not dispute that the

---

[4] At the relevant time Philpott was plaintiff's Assistant Vice-President/Casualty Claims Officer. Premru was Trachtel's Vice-President of Operations for its Swing Stage Division. Ford was plaintiff's Senior Vice-President of Claims.

5

documents at issue are protected by the attorney-client privilege and/or the work-product doctrine, defendants contend the emails are still discoverable.[5]

In connection with this discovery dispute the Court reviewed in camera the documents Liberty is withholding on the grounds of privilege and work-product. These documents are the emails and draft agreements the interested parties exchanged from August to November 2011 regarding the terms of the Settlement Agreement that was eventually signed on November 22, 2011. It is evident from the documents that Robert Philpott played the key role for Liberty regarding Liberty's input into the Tractel/Borgata settlement terms. During the key time period Philpott exchanged emails and draft agreements with various individuals regarding the settlement terms, including Tractel's assigned defense counsel, Infinity's counsel, and Liberty's own counsel. These are the documents the Court reviewed in camera.[6]

Discussion

Even though the parties agree the subject documents are covered by the attorney-client privilege and/or the work-product doctrine, that does not end the discussion as to whether the

---

[5] Given the parties' positions, the Court is not making an independent finding regarding whether the documents at issue are privileged or work-product.
[6] The Court's review was painstaking.  Given the number of involved individuals, email chains, and draft agreements, it was exceedingly difficult to make sense of the relevant communications.  The Court is confident, however, that it has a good grasp of the documents it reviewed.

6

documents are discoverable. Exceptions exist that have to be analyzed in this context.

    1.    Attorney-Client Privilege

A court sitting in a diversity action applies state law with regard to the attorney-client privilege. The burden of establishing that a communication or document is privileged is on the party asserting the privilege. Torres v. Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996). The attorney-client privilege protects communications when: (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer, (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort, and (4) the privilege has been (a) claimed and (b) not waived by the client. Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994). The attorney-client privilege does not apply merely because a statement was made by or to an attorney. Nor does the privilege apply simply because a communication conveys advice that is legal in nature. HPD Laboratories, Inc. v. Clorox

Co., 202 F.R.D. 410, 414 (D.N.J. 2001). Instead, the privilege "protects only those disclosures - necessary to obtain informed legal advice – which might not have been made absent the privilege." Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423-24 (3d Cir. 1991)(emphasis in original)(citation omitted).

Importantly, however, under New Jersey law the attorney-client privilege is qualified. In re Kozlov, 79 N.J. 232 (1979). It is now well settled that the attorney-client privilege may be pierced where there are "other important societal concerns." United Jersey Bank v. Walosoff, 196 N.J. Super. 553, 563 (App. Div. 1984)(citation omitted). Pursuant to Kozlov the attorney-client privilege may be pierced where (1) there is a legitimate need for the requested information, (2) the information is relevant and material, and (3) the information could not be obtained from a less intrusive source. Kozlov, 79 N.J. at 243-44.

With regard to the current discovery dispute, the Court is tasked with deciding whether the attorney-client privilege should be pierced. This requires balancing between two of the bedrock principles underpinning our system of jurisprudence. Blitz v. 970 Realty Associates, 233 N.J. Super. 29, 38 (App. Div. Nov. 22, 2011). On the one hand, a privilege against compelled disclosure of relevant evidence runs counter to the

8

fundamental notion that the fullest disclosure of fact will lead to the truth.  Kinsella v. Kinsella, 150 N.J. 276, 294 (1997); see also Wagi v. Silver Ridge Park West, 243 N.J. Super. 547, 556 (1989)("To the extent that [a] privilege results in the suppression of evidence, it is at "war with the truth" and must be strictly anchored to its essential purpose")(internal quotation omitted).  On the other hand, the attorney-client privilege reflects the societal judgment that the need for confidentiality outweighs the need for disclosure. Payton v. New Jersey Tpk. Auth., 148 N.J. 524, 539 (1997); see also Kozlov, 79 N.J. at 243  (The privilege "has a well-defined relationship, recognized and defined over the centuries, to the administration of justice, to the basic needs of the human condition, to the essential rights of man and thus to the public interest.  As such it clearly deserves the continued protection of the courts.").

Given the importance of the attorney-client privilege, courts recognize that Kozlov did not abolish the privilege or relegate it to the status of a pedestrian discovery dispute. Dontzin v. Myer, 301 N.J. Super. 501, 508 (App. Div. 1997). Clearly, therefore, merely because privileged information is relevant does not necessarily require that it be produced.  In Matter of Mackson, 114 N.J. 527, 532 (1989), the court described the privilege as involving "circumstances so grave … that the

9

privilege must yield to the most fundamental values of our justice system." More recently, the Appellate Division equated "grave" with "compelling" circumstances. <u>ACBBBits, LLC v. 550 Broad Street, L.P.</u>, 2011 WL 5838737, at *8 (N.J. Super. Ct. App. Div. Nov. 22, 2011).

    2.   <u>Work-Product Doctrine</u>

Fed. R. Civ. P. 26(b)(3)(A) ordinarily protects work-product from discovery. However, work-product may be discovered if the requested materials are relevant and the requesting party shows that is has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. <u>Id.</u> If the Court orders work-product to be produced, it must protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation. However, "opinion work-product" is not absolutely protected and may be produced in rare circumstances. <u>In re Cendant Securities Litigation</u>, 343 F.3d 658, 663-64 (3d Cir. 2003).

    3.   <u>Documents to be Produced</u>

Having reviewed in detail the record before the Court, the Court is left with the firm conviction that fairness dictates that some of plaintiff's privileged and work-product documents be produced, and that defendants have a substantial need for

10

these documents that are not otherwise available in discovery. The Court starts with the notion that defendants view their "standing" defense as a key to their case. Although Liberty dismisses the defense as meritless, the defense is viable at this stage of the case. Liberty must recognize this fact as evidenced by its production of Philpott, Premru and Ford for deposition.  If the deposition testimony of these witnesses gave defendants a fair and complete picture of Philpott's knowledge and input regarding the negotiation of the Tractel/Borgata Settlement Agreement, the Court would not direct that additional documents be produced.  However, this is not the case.

Liberty produced for the Court's review the deposition testimony wherein defendants questioned Liberty's witnesses about the Tractel/Borgata assignment. Liberty believes this testimony "confirms that the defendants had ample opportunity … to explore the issue of whether 'Tractel' had the authority and permission to include [plaintiff] in the assignment provision set forth in its settlement with the owners of the Borgata." April 3, 2014 Letter Brief at 1. The Court disagrees.  While it is certainly true that the final Settlement Agreement was produced in discovery, as well as some non-privileged communications regarding the parties' negotiations, and that defendants questioned Philpott about these documents, the fact of the matter is that defendants will not have a complete

11

picture of the parties' settlement discussions without the documents the Court is ordering to be produced.

The fact that defendants were hamstrung because they did not have all relevant documents when they deposed Philpott is evident by Philpott's answers to important questions. The content and timing of the different drafts of the Settlement Agreement is undoubtedly important. Nevertheless, Philpott did not remember what the first draft said, he did not know how many drafts were exchanged, and he did not know when he saw a draft. August 15, 2013 Dep. Tr. 204:16 to 205:9. Further, although Philpott was insistent that he tried to remove the key assignment clause from the final agreement, he could not specify who made this attempt or when. Id. 207:3 to 208:16. When asked why the assignment clause stayed in the final Settlement Agreement if Liberty wanted it out, Philpott testified, "I don't have an answer to that question." Id. 208:17-20. The Court believes it is likely that the documents to be produced will refresh Philpott's recollection.

Other examples abound to evidence that defendants were hamstrung because not all relevant documents were produced. For example: (1) Philpott did not remember if he saw a draft of the Settlement Agreement with the assignment provision struck (id. 211:20 to 24), (2) he did not remember if he spoke to anyone about the assignment clause (id. 211:25 to 212:2), and (3) he

12

did not remember if he gave the go ahead to sign the final Agreement (id. 219:19 to 220:2). Importantly, Philpott testified that while he approved the settlement and settlement amount, he did not approve the final Settlement Agreement and is not bound by it. Id. 235:13-16. He also testified he did not believe Liberty had the option not to agree to the assignment language and not to agree to the settlement. Id. 229:20 to 230:6. In addition, Philpott testified he did not reach a conclusion as to whether the assignment provision would bind plaintiff. October 23, 2013 Dep. Tr. 332:19 to 25. Based on the Court's in camera review, it believes that additional documents should be produced in order to give defendants a clearer picture of what went on. Given the stakes in the case and Philpott's important role and self-interest, defendants should not have to accept Philpott's testimony at "face value," especially since he could not remember important details regarding his communications in 2011.

    4.   Documents to be Produced

To date defendants have only received the final version of the Settlement Agreement.  The Court concludes that Liberty should produce the different drafts of the Agreement in chronological order.  The following documents shall be produced:

>  1.   **CTRL 336-340** (Based on the accompanying emails that are not being produced, this is the version of the Agreement Philpott had at least as early as August 30, 2011.)

2.  **CTRL 229-233** (These are the comments Philpott sent to Withers on September 7, 2011.)

3.  **CTRL 1755-1760** (The Court's best judgment, although it is not certain, is that Withers sent this version to Philpott, et al. on September 19, 2011 (10:48 a.m.), and that this version includes comments from the Borgata.)

4.  **LIU 4060-4068** (The Court understands that the October 18, 2011 emails (LIU 4060) were already produced. These emails add context to the accompanying draft of the Agreement.)

5.  **CTRL 1687-1693** (Per Philpott's October 20, 2011 email, this was the version "just provided by Withers".) Given the importance of this version, the Court is directing that some associated emails be produced.

6.  **CTRL 1664-1670** (This is the version attached to David Gabianelli's October 20, 2011 (12:36 p.m.) email to Philpott.)

7.  **CTRL 1672-1678** (This is the version attached to Gabianelli's October 20, 2011 (1:00 p.m.) email to Philpott.)

8.  **CTRL 1583-1589** (This is the version attached to Gabianelli's November 2, 2011 (2:32 p.m.) email to Philpott.) Given the importance of this version, the Court will order that the two November 2, 2011 emails on **CTRL 1580** be produced.

In addition to the documents listed above, the Court also directs that the following emails be produced:

1.  Philpott to Withers, et al. – August 12, 2011 (9:11 a.m.), **CTRL 148**.

2.  Withers to Philpott – August 12, 2011 (2:56 p.m.), **CTRL 3508**.

3.  Philpott to Withers – August 12, 2011 (3:06 p.m.), **LIU 3511**.

14

4.  Withers to Philpott, et al. – September 19, 2011 (10:48 a.m.), **CTRL 1744-45**. (Only produce the first sentence and paragraph 4.)

5.  Bertrand to Philpott – October 20, 2011 (9:22 a.m.), **CTRL 1655**.

6.  Philpott to Bertrand, et al. – October 20, 2011 (10:07 a.m.), **CTRL 1682.**

7.  Philpott to Goodman, et al. – October 20, 2011 (10:40 a.m.), **CTRL 1681**.

8.  Philpott to Gabianelli – October 20, 2011 (1:20 p.m.), **CTRL 1652.**

9.  Philpott to Bertrand – October 20, 2011 (1:49 p.m.), **CTRL 1655**.

10. Withers to Gabianelli, et al. – November 2, 2011 (7:22 a.m.), **CTRL 1580.**

11. Withers to Gabianelli – November 2, 2011 (10:11 a.m.), **CTRL 1561.**

12. Gabianelli to Philpott – November 2, 2011 (2:32 p.m.), **CTRL 1580.**

13. Withers to Gabianelli – November 3, 2011 (10:43 a.m.), **CTRL 1552.**

14. Withers to Philpott, et al. – November 3, 2011 (10:41 a.m.), **CTRL 1550.**

15. Philpott to Withers, et al. – November 3, 2011 (4:02 p.m.), **CTRL 1550.**

16. Withers to Gabianelli – November 17, 2011 (2:39 p.m.), **CTRL 1499.**

17. Gabianelli to Withers – November 22, 2011 (10:10 a.m.), **CTRL 1499.**

As to the foregoing documents, the Court finds there is a legitimate need for them, the information is relevant and

material, and the information cannot be obtained from a less intrusive source. In addition, the documents are relevant to one of defendants' central defenses.  Also, the discovery conducted thus far on the negotiations regarding the subject language is incomplete. Due to the fact that the negotiations occurred in 2011, it is not surprising that Philpott did not have a good recollection of what occurred. The drafts of the Settlement Agreement and the important emails to be produced tell the true and complete story. See United Jersey Bank v. Wolosoff, 196 N.J. Super. 553 (App. Div. 1984) (defendants in action seeking rescission of stipulation of settlement and damages due to alleged fraud had a legitimate need for disclosure of communications between counsel for plaintiff bank and others concerning the settlement, the communications were both relevant and material, and the evidence could not be secured from any less intrusive source, thus meeting Kozlov requirements); Fahs Rolston Paving Corp. v. Pennington Properties Dev. Corp., C.A. No. 03-4593 (MLC), 2006 WL 3827427, at *5 (D.N.J. Dec. 28, 2006) (ordering communications between counsel and client regarding specific subjects to be disclosed where all prongs of Kozlov were met).[7]

---

[7] It is clear that the compelled disclosure of privileged documents does not operate as a waiver of plaintiff's privilege. United Jersey Bank, 196 N.J. Super. at 567 n.3.

The Court recognizes that the attorney-client privilege and work-product doctrine are not to be lightly regarded. Nonetheless, defendants have a substantial need for the requested information. The information is essential to defendant's defense and all efforts thus far to get a complete picture of the genesis and execution of the final assignment language has been unsuccessful. See In re Neurontin Antitrust Litig., C.A. No. 02-1390, 2011 WL 2357793, at *8 (D.N.J. June 9, 2011) (affirming magistrate judge's finding that a substantial need existed where the only way to reconcile defendant's denial of using a product off-label and simultaneous public admission was to look at work product); Occulto v. Adamar of New Jersey, Inc., 125 F.R.D. 611, 614 (D.N.J. 1989) (finding a substantial need existed to obtain a draft expert report where attorney admitted he drafted the report and had the expert sign it).

The Court is aware of the fact that some of the documents to be produced may touch on mental impressions, conclusions or opinions. However, as noted, opinion work-product is not afforded absolute protection and may be produced in rare cases. Cendant, supra. Production is warranted here for several reasons. One, Philpott has already testified to his impressions and opinions and the documents to be produced are directly related to this testimony. It would be unfair to defendants if they were not given a complete picture of what happened, instead

17

of just Philpott's sketchy recollection from the incomplete non-privileged documents produced to date. Second, only a minimal amount of opinion information is produced. Third, in the Court's view unless some opinion work-product is produced defendants will not get a fair and complete picture of what transpired. Fourth, the Court used its best efforts to minimize the opinion work-product to be produced.

Frankly, the Court is at a loss to understand why Liberty would object to the production of the documents listed in this Order.  The Court went to great lengths to review and understand the voluminous in camera documents it reviewed, and to only Order the production of the relatively small number of documents necessary to give defendants a complete and fair picture of what happened. Most of the emails to be produced involve Philpott's own words. The content of the documents to be produced speak for themselves and the parties will evaluate for themselves whether the documents help or hurt them. Nevertheless, based on what the Court has seen Liberty can certainly make a credible argument that its documents confirm Philpott's intent as expressed at his deposition. Whether this is enough to defeat defendants' standing defense is not for this Court to decide.[8]

---

[8] To be clear, the Court is not weighing in on whether the produced documents warrant the dismissal of Liberty's complaint.  That issue is not before the Court.

Conclusion

In conclusion, for the reasons expressed in this Order the Court finds that some of the documents the parties agree are privileged and/or work-product should be produced.[9] As to these documents, the Court finds that the privileged documents should be produced pursuant to the criteria identified in Kozlov. The work-product shall be produced because defendants have a substantial need for the documents and there is no other available source from which to obtain the information. It is clear that Liberty is not voluntarily producing the designated documents but they are only being produced because of this Order. The Court has no objection if the parties execute a non-waiver agreement pursuant to Fed. R. Evid. 502.[10]

### ORDER

Accordingly, for all the foregoing reasons, it is hereby ORDERED this 10th day of December, 2014, that defendants' request for production of plaintiff's attorney-client privileged and work-product documents is GRANTED in part and DENIED in part. By December 19, 2014, plaintiff shall produce to

---

[9] To assist the parties, the Bates numbers of the documents to be produced are in bold typeface.

[10] The Court is not retaining a copy of all the documents it reviewed in camera. It is only retaining copies of the Bates numbered documents identified in this Order.

defendants copies of the Bates-stamped documents identified herein.  Defendants' request for all other documents is denied.[11]

                                                        s/Joel Schneider
                                                        JOEL SCHNEIDER
                                                        United States Magistrate Judge

---

[11] This Order only addresses defendants' request for documents.  The Court is not presently deciding whether defendants can re-repose any witness.